**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LAURA THOMPSON, a single woman; JUSTINE COX, a single woman; VICKIE LUTZ, a married woman; LACEY CHAINHALT, a single woman; NICOLE MORGESON, a single woman;<br><br>Plaintiffs,<br><br>vs.<br><br>STEVEN H. WIENER, M.D., and LAUREN WIENER, husband and wife; STEVEN H. WIENER, M.D., P.C., an Arizona professional corporation; PAMELA S. HENDERSON, M.D., a single woman; PAMELA S. HENDERSON, M.D., P.C., an Arizona professional corporation; NEW IMAGE PLASTIC SURGERY, L.L.C., an Arizona limited liability company; NEW IMAGE SKIN SPA, L.L.C., an Arizona limited liability company; DOES I-X; CORPORATIONS A-Z;<br><br>Defendants. | No. CV08-991-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. # 14.) Defendants argue that: (1) the Court lacks subject matter jurisdiction over Counts I and II as to some Defendants; and (2) Plaintiffs' Counts I-VI, X, and XI fail to state a claim upon which relief may be

granted. Plaintiffs filed a response. (Dkt. # 15.) Defendants replied. (Dkt. # 18.) For the following reasons, the Court grants the motion in part and denies the motion in part.

## BACKGROUND

For purposes of this motion, the facts alleged in Plaintiffs' Complaint are accepted as true. Plaintiffs Laura Thompson, Justine Cox, Vickie Lutz, Lacey Chainhalt, and Nicole Morgeson were employed and/or supervised by Defendants Steven H. Wiener, M.D. ("Dr. Wiener"); Lauren Wiener; Steven H. Wiener, M.D., P.C. ("Wiener P.C."); Pamela S. Henderson, M.D. ("Dr. Henderson"); Pamela S. Henderson, M.D., P.C. ("Henderson P.C."); New Image Plastic Surgery, L.L.C. ("New Image PS"); and, alternatively, New Image Skin Spa, L.L.C. ("New Image SS"). Both New Image PS and New Image SS are Arizona limited liability companies. New Image PS and New Image SS are controlled by both Wiener P.C. and Henderson P.C. Dr. Wiener is the only shareholder of Wiener P.C. and Dr. Henderson is the only shareholder of Henderson P.C. Finally, New Image PS and New Image SS are closely-related businesses and will be treated together (referred to collectively as "New Image") unless specific allegations in the Complaint clearly refer to only one of those companies.

The Complaint alleges the following: Dr. Wiener sexually harassed Plaintiffs during their employment, and the other Defendants knew of the harassment but failed to prevent it. During their employment, Plaintiffs were subjected to a sexually-charged atmosphere created and fostered by Dr. Wiener. Dr. Wiener would request that Plaintiffs enter his office and view pornographic websites with him during business hours. Dr. Wiener would also send sexually explicit e-mails to Plaintiffs' work and home e-mail addresses. Dr. Wiener engaged in sexual banter with Plaintiffs during work hours. Dr. Wiener also made inappropriate comments and sexual innuendos during surgery, used medical instruments in an inappropriate manner, and made inappropriate comments to his staff about women who entered New Image. Dr. Wiener touched Ms. Chainhalt with medical instruments in a sexual and unsolicited manner. Plaintiffs complained of the situation to Defendants. After Plaintiffs

complained of harassment, Defendants failed to discipline, reprimand, or otherwise prevent future harassment.

Dr. Wiener also provided medical treatment to Plaintiffs. The Complaint alleges that Dr. Wiener performed a breast augmentation on Plaintiff Cox, and used bigger implants than those to which she agreed. Following Ms. Cox' breast augmentation, Dr. Wiener made inappropriate comments, requested that Plaintiff Cox pose for post-op photographs longer than necessary for medical purposes, and called Ms. Cox "Bustine." Dr. Wiener also prescribed Xanax to Ms. Cox.

Ms. Chainhalt's employment ended in May of 2007. Ms. Lutz's, Ms. Cox', and Ms. Thompson's employment ended in July of 2007. Ms. Morgeson's employment ended in August of 2007.

Plaintiffs filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against New Image PS and Dr. Wiener. Plaintiffs received their Notice of Suit Rights from the EEOC on March 20, 2008, and this Complaint, alleging Title VII and Arizona Civil Rights Act ("ACRA") violations, was filed on March 31, 2008.

## DISCUSSION

**I.    Rule 12(b)(1) Motion**

Defendants assert that the Court lacks subject matter jurisdiction over Counts I and II as to Defendants Dr. Henderson, Henderson P.C., and New Image SS.

**A.    Legal Standard**

Plaintiffs' Title VII claim must satisfy certain jurisdictional prerequisites. The general rule is that "[b]efore bringing suit under Title VII, a plaintiff must exhaust the administrative remedies under [42 U.S.C. §] 2000e-5." *Karim-Panachi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). As part of these administrative remedies, "[p]laintiffs must file a discrimination charge with the [EEOC] and receive a right-to-sue letter from the Commission." *Id*.

Nevertheless the Ninth Circuit held that there are three exceptions to this rule:

> First, if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are "substantially identical parties," suit may proceed against the unnamed party. . . . Second, suit may proceed if the EEOC could have inferred that the unnamed party violated Title VII. Third, if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings, then suit may proceed against the unnamed party.

*Sosa v. Hiraoka*, 920 F.2d 1451, 1459 (9th Cir. 1990) (citing 2 A. Larson, *Employment Discrimination* § 49.11(c)(2) (1990)) (internal citation omitted).

The Ninth Circuit has also held that "defendants not named in the EEOC complaint can be sued under Title VII where such individuals should have anticipated being named in a Title VII action arising from the complaint." *Ortez v. Wash. County*, 88 F.3d 804, 808 (9th Cir. 1996). Furthermore, *Ortez* holds that "Title VII charges can be brought against persons not named in an EEOC complaint as long as they were involved in the acts giving rise to the EEOC claims." *Id.* (citing *Sosa*, 920 F.2d at 1458) (internal citations omitted).

Additionally, the Ninth Circuit held in *B.K.B. v. Maui Police Department* that a federal court's "subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotations omitted); *see E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994); *Sosa*, 920 F.2d at 1456.

Moreover, *B.K.B.* reaffirmed this Circuit's view that its courts should "construe the language of EEOC charges with 'utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *B.K.B.*, 276 F.3d at 1100 (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975)); *see also Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997); *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982) (holding that "EEOC charges must be liberally construed," and therefore that doctors not named in an EEOC claim, but who should have anticipated a suit brought against them, were proper defendants); *cf. Albano v. Schering-Plough Corp.*, 912 F.2d 384, 388 (9th Cir. 1990) (viewing the "EEOC charge

- 4 -

primarily as an impetus to EEOC investigation and conciliation, not as a pleading giving notice to the employer").

### B. Application

Defendants argue that the Court only has subject matter jurisdiction over Defendants New Image PS and Dr. Wiener because those were the only Defendants named in the EEOC claim. However, because the allegations in the Complaint are sufficient for this Court to apply the Ninth Circuit's exceptions to the general rule, Defendants' argument fails in the context of a motion to dismiss.

First, the relationship that is alleged to exist between Defendants causes this case to fall under the "substantially identical parties" exception adopted in *Sosa*. In that case, a college professor filed an EEOC claim of racial discrimination against a college District "through its administrators." *Sosa*, 920 F.2d at 1457. However the professor's subsequent lawsuit charged discrimination against not only the District, but also the school's administration, its chancellor, and the District's trustees. *Id*. at 1458. While the trial court dismissed all the complaints against those not in the EEOC claim, the Ninth Circuit reversed, holding (in specific relation to the claim against the trustees) that the trustees were "substantially identical parties" to the District because they governed the District. *Id.* at 1460. Here, Plaintiffs named New Image PS in their EEOC claim, and New Image PS was governed by Dr. Wiener and Dr. Henderson. Plaintiffs also allege that New Image SS was a substantially identical party to New Image PS, also bringing it under this exception to the exhaustion rule.

Plaintiffs' Complaint further alleges that the Defendants not named in the EEOC claim "knew or should have known" about the harassment and had a duty to stop it. (Dkt. # 1 Ex. A at ¶ 32.) This allegation, if true, is sufficient to allow an EEOC investigation, pointed initially at Dr. Wiener and New Image PS, to grow to include the other Defendants, thereby falling under the *B.K.B.* exception. The facts are also sufficient to bring this case under the "involvement" exception in *Ortez* because all employer-Defendants not named in the EEOC claim allegedly participated in the acts giving rise to the claim by failing to

- 5 -

1  prevent harassment of which they were aware and which they had a duty to prevent. (Dkt.
2  # 1 Ex. A at ¶¶ 31-32.)

3  Finally, the Court also finds jurisdiction under the first prong of *Sosa*, which allows
4  a suit to proceed if "the respondent named in the EEOC charge is a principal or agent of the
5  unnamed party." *Sosa*, 920 F.2d at 1459. Henderson P.C. and Wiener P.C. are the agents
6  of New Image PS because Henderson P.C. and Wiener P.C. are the members of New Image
7  PS. (Dkt. # 1 Ex. A ¶ 9.) *See* Ariz. Rev. Stat. § 29-654(A)(1) (providing that, unless
8  otherwise stated in the Articles of Organization, "[e]ach member is an agent of the limited
9  liability company for the purpose of carrying on its business in the usual way."). Therefore,
10 it would not be proper to dismiss the claim on the present motion.

11 In light of the Ninth Circuit's insistence that the Court construe EEOC claims with the
12 utmost liberality, the Court holds that subject matter jurisdiction exists over all defendants.

13 **II.    Rule 12(b)(6) Motions**

14 Defendants assert that Plaintiffs' Complaint fails to state a claim upon which relief
15 can be granted in Counts I-VI, X, and XI. The Court will address Counts I and II together
16 and address all other Counts separately.

17 **A.    General Legal Standard**

18 In order to survive a dismissal for failure to state a claim pursuant to Rule 12(b)(6), a
19 complaint must contain more than a "formulaic recitation of the elements of a cause of
20 action"; it must contain factual allegations sufficient to "raise the right of relief above the
21 speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "The pleading
22 must contain something more . . . than . . . a statement of facts that merely creates a suspicion
23 [of] a legally cognizable right of action." *Id.* (quoting 5 Charles Alan Wright & Arthur R.
24 Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)). While "a complaint need not
25 contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief
26 that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th
27 Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974).

28

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens*, 534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**B.    Application**

**1.    Counts I and II**

Defendants argue that Title VII and ACRA claims can only be brought against employers (Dkt. # 14 at 4), and because Plaintiffs' Complaint states that Plaintiffs were "either 'employed by and/or supervised by all Defendants'" (Dkt. # 14 at 5), Plaintiffs have failed to affirmatively allege that *all* Defendants were their employers. However, taking all allegations of material fact and construing them in the light most favorable to Plaintiffs, the Complaint does state a claim for which relief can be granted. While Defendants contend that paragraph 22 of Plaintiffs' Complaint implies that some Defendants were employers and others were supervisors, a reading most favorable to Plaintiffs would support the conclusion that *all* Defendants were employers. Therefore, the Court, treating the language in the light most favorable to Plaintiffs, finds that Counts I and II satisfy Rule 12(b)(6).

**2.    Count III**

Defendants argue that Count III must be dismissed because: (a) the facts alleged in the Complaint do not rise to the level of extreme and outrageous conduct; and (b) Plaintiffs' claim against New Image and Wiener P.C. are preempted by workmen's compensation law.

### a. Are the facts alleged sufficient to rise to the level of extreme and outrageous?

Defendants argue that the Intentional Infliction of Emotional Distress ("IIED") claim cannot be supported because the alleged conduct is not extreme and outrageous. (Dkt. # 14 at 7.) A plaintiff may "recover for [IIED] only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (Ariz. 1978) (quoting *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (Ariz. 1969)); *see Cummins v. Mold-In Graphic*, 200 Ariz. 335, 345, 26 P.3d 518, 528 (Ariz. Ct. App. 2001); Restatement (Second) of Torts § 46 cmt. d (1965).

In *Craig v. M & O Agencies, Inc.*, the Ninth Circuit found that a supervisor's conduct was extreme and outrageous when he repeatedly propositioned a female employee sexually, grabbed her, and stuck his tongue in her mouth. 496 F.3d 1047, 1059 (9th Cir. 2007). The court explained that "[w]hile [such] conduct is deplorable in any setting, a reasonable observer or trier of fact could find it to be 'outrageous' and 'extreme,' *particularly in an employment context*." *Id.* (emphasis added). In the same way, Plaintiffs' allegations about Dr. Wiener's viewing of pornography with his staff, his sexually explicit gestures, his sexual comments, his sending of sexually explicit e-mails to Plaintiffs' work and home e-mail addresses, and his sexual propositions sufficiently alleged the level of extreme and outrageous conduct necessary to overcome a motion to dismiss. (*See* Dkt. # 1 Ex. A at ¶¶ 26-28, 47, 80.)

Defendants cite *Patton* and *Mintz v. Bell Atlantic Systems Leasing International., Inc.*, 183 Ariz. 550, 905 P.2d 559 (Ariz. Ct. App. 1995), to support their argument that the alleged conduct is not extreme and outrageous. (Dkt. # 14 at 7.) However, the alleged

1   conduct of Dr. Wiener is more similar to the type of conduct alleged in *Craig* than the
2   conduct in *Patton* or *Mintz*. *See Patton*, 188 Ariz. at 476, 578 P.2d at 155 (holding that a
3   bank's demand of a transfer fee, rate increase on a loan, trustee sale on a property, and
4   failure to issue a notice of trustee sale do not rise to the level of outrageousness required for
5   IIED); *Mintz*, 183 Ariz. at 554-55, 905 P.2d at 563-64 (holding that an employer's conduct
6   was not extreme and outrageous when the employer failed to promote the plaintiff, forced
7   her to return to work when she was in the hospital, and hand-delivered a letter to her in the
8   hospital to tell her that her job duties had been reassigned).

9   Defendants also allege that *Mintz* holds that it is unusual to find outrageousness in
10  the employment context. (Dkt. # 14 at 7.)  This reading of *Mintz* is too broad, however,
11  because the conduct in that case related to business operations and not, as here, to matters
12  at best tangential to the running of a business. *See* 183 Ariz. at 550, 554, 905 P.2d at 559,
13  563. The *Mintz* court noted, for instance, that "Bell Atlantic [the employer] had a legitimate
14  business purpose in seeing that Mintz's work was done, either by her or by someone else."
15  183 Ariz. at 554, 905 P.2d at 563.  Such a business interest does not accompany Dr.
16  Wiener's alleged conduct.

17  Defendants further cite *St. George v. Home Depot U.S.A., Inc.*, No. CV-04-1210,
18  2007 WL  604925 (D. Ariz. Feb. 22, 2007), to support the proposition that Dr. Wiener's
19  conduct does not meet the extreme and outrageous requirement. (Dkt. # 14 at 8.) The facts
20  of *St. George* are similar to those in the present case, involving inappropriate sexual
21  behavior directed towards female employees. *See* 2007 WL 604925, at *1-3. However, *St.
22  George* addresses whether the plaintiffs' case could survive a summary judgment motion,
23  not a motion to dismiss. *Id.* at *1.  Additionally, Defendants' analogy to *St. George* is
24  inapposite because Plaintiffs' claims were dismissed not for failing to meet the extreme and
25  outrageous requirement, but for failing to prove that they suffered severe emotional distress.
26  2007 WL 604925, at *7, *15.  In fact, the court in *St. George* considered much of the
27  alleged behavior to be extreme and outrageous.  Therefore, the allegations of Dr. Wiener's
28  similar conduct are sufficient to state a claim.

- 9 -

Defendants next contend that the alleged conduct of the entity defendants is not sufficiently extreme and outrageous to state an action for IIED. (Dkt. # 14 at 9.) Nevertheless, in *Ford v. Revlon, Inc.*, the court found that an employer that was aware of sexual harassment and failed to stop it could be liable for IIED. 153 Ariz. 38, 42-43, 734 P.2d 580, 584-85 (Ariz. 1987). The *Ford* court found that "Revlon's [the employer] conduct can be classified as extreme and outrageous. Ford [the employee] made numerous Revlon managers aware of Braun's activities at company functions. . . . Revlon ignored her and the situation she faced, dragging the matter out for months and leaving Ford without redress." *Id.* at 43, 734 P.2d at 585. In the current case, Plaintiffs allege that:

> Defendants knew or should have known that a hostile work environment existed and failed to take appropriate action. Plaintiffs complained of the situation to Defendants. After Plaintiffs complained of harassment, Defendants failed to discipline, reprimand or otherwise prevent future harassment by Defendants, thereby sanctioning and ratifying their conduct and encouraging an environment where such harassment was allowed.

(Dkt. # 1 Ex. A at ¶¶ 108-10.) Taking all facts stated in the Complaint as true, Defendants' failure to investigate the sexual harassment complaints is sufficiently similar to *Ford* to state a claim.

Finally, Defendants, citing *Twombly*, raise the issue of whether the factual allegations in the Complaint are enough to raise the right of relief above the speculative level. (Dkt. # 18 at 5.) Here, the Complaint does allege sufficient facts. Plaintiffs do, in fact, assert numerous detailed factual allegations of sexual harassment that support a claim for IIED. (*See, e.g.*, Dkt. # 1 Ex. A at ¶ 26.) Dr. Wiener's sexual conduct relating to each individual Plaintiff is in the Complaint. (*See, e.g.*, Dkt. # 1 Ex. A at ¶¶ 38, 48, 62, 79, 93.) These allegations differ from those in *Twombly* because they raise a reasonable expectation that discovery will reveal evidence of conduct that could rise to the extreme and outrageous level.

        **b.**       **Are Plaintiffs' claims for IIED preempted against New Image and Wiener P.C.?**

Defendants argue that Plaintiffs' claims for IIED are preempted by the workmen's compensation law. (Dkt. # 14 at 9.) A plaintiff's IIED claim is not preempted by the workmen's compensation law if the conduct at issue is not an accident and the employer intends distress "or recklessly disregard[s] the near certainty that such distress will result from his conduct . . . ." *Ford*, 153 Ariz. at 43, 734 P.2d at 585. If "acts of the employer were of an intentional nature," then they are not accidental according to the workmen's compensation law. *Irvin Investors, Inc. v. Superior Court*, 800 P.2d 979, 981 (Ariz. Ct. App. 1990) (citing *Ford*, 153 Ariz. at 43, 734 P.2d at 585).

The Complaint alleges that the conduct of Wiener P.C. and New Image in ignoring the sexual harassment complaints was intentional and independent of Dr. Wiener's conduct. As *Ford* explains:

> The failure of an employer to promptly investigate complaints of sexual harassment is significant in making a determination to impose liability on an employer for its supervisors' acts of sexual harassment.
>
> Such action and inaction and the resulting emotional injury to the plaintiff were therefore not 'unexpected,' accidental, or physical in nature so as to limit plaintiff's recovery to the workmen's compensation claim under A.R.S. §§ 23-1021(B) and 1043.01(B).

153 Ariz. at 43-44, 734 P.2d at 585-86. Therefore, the IIED claim is not preempted against Wiener P.C. and New Image.

### 3. Count IV

Defendants argue that Plaintiffs' constructive discharge claims against all Defendants should be dismissed because constructive discharge is not a cause of action in its own right. (Dkt. # 14 at 9.)

To support this contention, Defendants cite *Anderson v. Arizona*. No. 06-00817, 2007 WL 1461623, at *16 (D.Ariz. May 16, 2007) ("[C]onstructive discharge is not a cause of action in its own right."). However, *Anderson* states that a constructive discharge claim cannot be maintained *unless* there is another legally cognizable injury present: "[h]aving failed to make a prima facie case of disability discrimination, hostile work environment[,]

1. sexual harassment, or retaliation, Anderson's claim for back pay and other post-termination damages under the doctrine of constructive discharge must be dismissed." *Id.*

As opposed to *Anderson*, Plaintiffs here have alleged a separate legally cognizable action – sexual harassment. (Dkt. # 1 Ex. A at. ¶¶ 99-114.) Thus, the constructive discharge claim is permissible.

Defendants also argue that Plaintiffs do not state sufficient facts to support a constructive discharge claim. Specifically, Defendants argue that Plaintiffs, with the exception of Vickie Lutz, do not plead that they resigned. (Dkt. # 14 at 10.) An employee must leave his employment to support a constructive discharge claim. *See Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004). Construing all facts in the light most favorable to the non-moving party, the Complaint does allege that all Plaintiffs resigned. The Complaint alleges that "Plaintiffs were wrongfully discharged or wrongfully constructively discharged from their employment." (Dkt. # 1 Ex. A at ¶ 133.) The Complaint also alleges that Ms. Thompson's and Ms. Chainhalt's employment "ceased" (Dkt. # 1 Ex. A at ¶¶ 43, 88), that Ms. Lutz "resigned" (Dkt. # 1 Ex. A at ¶ 71), that Ms. Morgeson "ultimately left New Image in August 2007 as a result of the sexually charged environment" (Dkt. # 1 Ex. A at ¶ 98), and that "Ms. Cox' employment was terminated in July 2007" (Dkt. # 1 Ex. A at. ¶ 57). Because all inferences are made in favor of the non-moving party, the Court finds that these statements could be read to mean that each Plaintiff left their employment. Therefore, the motion to dismiss the claim for constructive discharge is denied.

///

///

### 4. Count V

Defendants argue that the claim for negligent supervision should be dismissed because it is preempted by the Arizona workmen's compensation laws. (Dkt. # 14 at 10.) In Arizona:

> a negligence claim is precluded by the workers compensation statutes while a claim for intentional infliction of emotional distress is not precluded. . . .

- 12 -

> [P]ursuant to the holding in *Irvin Investors*, Arizona law precludes an employee from bringing a tort action based on negligent hiring and negligent retention against their employer. . . .

*Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1131 (D. Ariz. 2003).

Plaintiffs cite to *Ford* contending that "[c]ourts have held that claims for negligent supervision are not barred by the remedy of workmen's compensation when 'willful misconduct' on the part of the employer is shown." (Dkt. # 15 at 9.) *Ford*, however, only addressed preemption of the intentional claims of assault and battery and IIED, and did not address negligent supervision. 153 Ariz. at 44, 734 P.2d at 586. To suggest that an employee who is injured by another employee could bring suit against their mutual employer for negligent supervision would allow an exception to the workmen's compensation statute that would swallow the rule. Thus, the Court holds that Plaintiffs' claim for negligent supervision is preempted.

### 5. Count VI

Defendants contend that the claim of negligence per se should be dismissed because Plaintiffs have failed to allege specific facts to support that claim. "A violation of an ordinance or statute forbidding a party to do a certain act is negligence per se." *Cobb v. Salt River Valley Water Users' Ass'n*, 57 Ariz. 451, 453, 114 P.2d 904, 906 (Ariz. 1941). Plaintiffs allege that the negligence per se claim is proper because Defendants violated Arizona Revised Statute § 13-1403 (Supp. 2007). (Dkt. # 1 Ex. A at ¶ 142.) That statute states, "A person commits public sexual indecency by intentionally or knowingly engaging in . . . [a]n act of sexual contact." Ariz. Rev. Stat. § 13-1403. "'Sexual contact' is defined as any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by an object or causing a person to engage in such conduct." Ariz. Rev. Stat. § 13-1401 (2001).

Plaintiffs have alleged facts sufficient to maintain a claim that Dr. Wiener violated section 13-1403. Plaintiffs allege that Dr. Wiener engaged "in acts of sexual contact in the presence of Plaintiffs." (Dkt. # 1 Ex. A at ¶ 142.) The Court construes all facts in a light most

favorable to the non-moving party, and the Court finds that the allegations are sufficient to support the inference that Dr. Wiener committed acts of sexual contact as prohibited by section 13-1403.  Therefore, Count VI is not dismissed.

### 6. Count X

Defendants contend that Count X for breach of fiduciary duty should be dismissed. (Dkt. # 14 at 12.) Plaintiffs allege that Defendants breached a fiduciary duty owed to Plaintiffs by virtue of the medical treatment provided by Dr. Wiener. (Dkt. # 1 Ex. A at ¶ 161.) A fiduciary relationship exists when one person "'is under a duty to act for or to give advice for the benefit of another upon matters *within the scope of the relation*.'" *Employers Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc.*, 422 F.3d 776, 779 (8th Cir. 2005) (emphasis added) (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986)); *Atl. Ritchfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163 (10th Cir. 2000) (citing *Johnston v. Cigna Corp.*, 916 P.2d 643, 646 (Colo. Ct. App. 1996)); *Sports Imaging of Ariz., L.L.C. v. 1993 CKC Trust*, No. 05-0205, 2008 WL 4448063, at *17 (Ariz. Ct. App. Sept. 30, 2008) (quoting Restatement (Second) of Torts § 874 cmt. a (1979)); *see also Black's Law Dictionary* 658 (8th ed. 2004) ("A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."). In Arizona, physicians owe a fiduciary duty to their patients. *Hales v. Pittman*, 118 Ariz. 305, 309, 576 P.2d 493, 497 (Ariz. 1978). Therefore, the allegation that Dr. Wiener is the treating physician to some or all Plaintiffs gives rise to a fiduciary duty here.

The Arizona Medical Malpractice Act ("AMMA"), however, may preempt claims for breach of a fiduciary duty in the physician-patient relationship. Ariz. Rev. Stat. § 12-562(A) (2003). The AMMA provides that "[a] medical malpractice action shall not be brought against a licensed health care provider except upon the grounds set forth in section 12-561." *Id.* "Medical malpractice action," for the purposes of the AMMA, is defined as:

> [a]n action for injury or death against a licensed health care provider based upon such provider's alleged negligence, *misconduct*, errors or omissions, or breach of contract in the

- 14 -

> rendering of *health care, medical services, nursing services or other health-related services* or for the rendering of such health care, medical services, nursing services or other health-related services, without express or implied consent . . . .

Ariz. Rev. Stat. § 12-561(2) (2003) (emphases added). "[T]he medical malpractice act does not shield health care providers from all other negligence actions that may be brought against them; it simply delineates the contours of claims that may be asserted against them arising from alleged *medical negligence*." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 404, 121 P.3d 1256, 1274 (Ariz. Ct. App. 2005) (citing Ariz. Rev. Stat. §§ 12-561(2), 12-562(A)). *Jeter's* reference to other negligence actions includes "negligent acts that have nothing to do with the rendering of medical or health care-related services." *Id.*

The Complaint alleges that Dr. Wiener breached his fiduciary duty by his "unprofessional conduct and treatment of Plaintiffs." (Dkt. # 1 Ex. A at ¶ 162.) Specifically, as it relates to Plaintiff Cox, the Complaint alleges that in performing procedures on Ms. Cox, Dr. Wiener used larger breast implants than agreed to and that he forced Ms. Cox to pose longer than necessary for post-op pictures of the results of the procedure. (Dkt. # 1 Ex. A at ¶¶ 50, 147.) While such allegations might otherwise assert a breach of fiduciary duty, they also fall squarely within the definition of medical malpractice as set forth in the AMMA because the conduct alleged constitutes an action for injury against a licensed health care provider based on the provider's "misconduct . . . in the rendering of health care . . . services." Ariz. Rev. Stat. § 12-561(2).

To be sure, Plaintiffs have alleged a variety of other misconduct in their other counts. Because the misconduct giving rise to the other claims did not occur in the context of rendering heath care services, there is no preemption by the AMMA. Nevertheless, merely because a fiduciary relationship may exist between Dr. Wiener and Plaintiffs, does not mean that all of the wrongs that Dr. Wiener may have inflicted on Plaintiffs arose within the scope of the physician-patient relationship and thus constitute a breach of his fiduciary duty. All of the specific allegations of misconduct in the Complaint that pertain to the breach of fiduciary duty claim involve misconduct in rendering medical services and are thus

preempted by the AMMA. Because, as pled, the breach of fiduciary duty claim is preempted by the AMMA, and because Plaintiffs fail to plead the basis for any other breaches of the fiduciary duty that would not similarly be preempted, Plaintiffs' claim for breach of fiduciary duty against Dr. Wiener is dismissed with leave to amend if possible.

Defendants argue that the breach of fiduciary duty claim against Wiener P.C. is improper because Wiener P.C. does not owe Plaintiffs a fiduciary duty as Plaintiffs' employer. (Dkt. # 14 at 13.) Plaintiffs fail to respond to this argument and instead argue vicarious liability. However, that theory of liability was not plead in the Complaint. (Dkt. # 15 at 12.) The Court therefore also dismisses Count X against Wiener P.C. To the extent that Plaintiffs can properly plead a breach of fiduciary duty claim against Dr. Wiener, Plaintiffs may amend the Complaint to include a vicarious theory of liability against Wiener P.C.

### 7. Count XI

Defendants argue, and Plaintiffs agree, that Count XI for punitive damages cannot stand alone as a separate claim and should be dismissed. Count XI is therefore dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Counts I, II, III, IV, and VI is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Counts V, X, and XI is **GRANTED**.

DATED this 24th day of November, 2008.

G. Murray Snow
United States District Judge